Good morning, Your Honors, and may it please the Court, Ajay Kusner from the Office of the Federal Public Defender for Petitioner-Appellant John Timothy Perez. Your Honors, Mr. Perez has presented this Court with two distinct theories of why his petition was timely filed in the District Court. Only one of these arguments may potentially be affected by the Supreme Court's grant of certiorari in McQuiggan v. Perkins, and that would be Perez's argument that he's entitled to an equitable exception to the statute of limitations for actual innocence. Do you have a view with respect to whether we should nevertheless decide the case, or would it be more prudent for us to await the Supreme Court's decision in McQuiggan? Yes, Your Honor. If the Court is inclined only to rule on the actual innocence argument, then it would be appropriate to hold the case until McQuiggan v. Perkins is actually decided, and then if Lee remains good law after that, we would request a remand for an evidentiary hearing on the issue of actual innocence. However, since there is an alternative argument, which is unaffected by the grant of certiorari in Perkins, even if the – excuse me – this other argument, which is based on Perez's entitlement to a delayed triggering date for the statute of limitations, statutory and equitable tolling, that argument is unaffected by Perkins, and it would still be appropriate to remand for a hearing on that theory at this point. That would be the issue of whether or not there is – this is a legitimate actual innocence claim. Yes, Your Honor. That would be not affected by whatever the Supreme Court does. Excuse me, Your Honor. That would not be affected by whatever the Supreme Court holds with regard to the tolling issue. Right? That would be not affected by whether or not there is a legitimate actual innocence claim here. Right. Yes, Your Honor. It's only if we find that the record should be reopened that we get to the question whether or not there's tininess in the application. If we hold that the record should not be reopened, that closes the matter. If you hold that there is not a tenable actual innocence argument here, then yes, Your Honor, that's correct. But based on all the evidence old and new here, I think it's pretty clear that there is a tenable actual innocence argument here and that Perez should be entitled to prove his innocence under Schlupp at an evidentiary hearing. Well, you're asking us to consider the statutory tolling issue. Yes, Your Honor. Okay. And you're relying on that. If we are not persuaded by your argument on the tolling issue, you still would have the fallback, would you not, of the actual innocence claim? Yes, Your Honor, yes. And you're saying with respect to that, we might as well wait, if we get to that stage. Exactly, Your Honor. Right. Since there are two distinct arguments here, if the Court is inclined only to rule on that innocence issue, then it would be more appropriate to wait for Perkins to be decided, since the Supreme Court is about to take this up. I wonder if it's worthwhile to probe the issue, whether or not a habeas should be granted on the merits. Oh, certainly, certainly. My concern was that the affidavits, declarations that were put forward to impeach the evidence that was presented at the trial, in effect, retries the same issue that was explored to quite a degree at the trial. For example, the witness Moran, which I think you would argue would be the key witness in identification, and couldn't remember who the defendant was, leading to the introduction in evidence of an identification during a lineup earlier, you would impugn that. But that was the subject of intensive cross-examination, not only of Moran, but of the other person who was shot. Mr. Walker? Walker, yes. So why should we reopen the case when this issue was intensely explored and the jury made a finding? Well, respectfully, Your Honor, I would dispute that this evidence came out at trial. What we have from Moran's declaration are a series of statements that were unknown to Mr. Peres before 2005. But the lineup was the subject of a preliminary examination. Yes, Your Honor, but the facts that came out in that 2005 declaration did not come out at trial about the suggestive identification procedure. It's standard questioning in cross-examination to look into the lineup and find out if there was suggestiveness or not in very many ways. And the idea of showing a photograph of a person that you want the lineup person to identify is classic in the literature. So not to ask that question, in my mind, is a very big surprise. That question would be asked. You'd explore the authenticity of the lineup. So what we're doing, you're asking us to do, is to redo that which was done at the trial. And I'm not sure that's appropriate for habeas corpus. Well, I would disagree, Your Honor, because what actually happened here is that Moran lied at trial, and he's admitted now that he personally held a gun. He said he didn't know. He couldn't identify. That was the lie.  He said he made an identification out of court. He was asked whether Detective Castillo pointed anything particular out about the six-pack. He said that didn't happen. So he essentially vouched for the process by which he identified Mr. Perez's photograph. And then on top of that, the prosecutor asked him, were you telling the truth when you identified Mr. Perez out of court? And he said yes. To top all of that off, the prosecutor relies on this identification in his closing argument to seal the deal, basically to say even though he didn't identify Mr. Perez in court, he identified the defendant in the lineup and never said that was wrong. He never said that I identified the wrong person. All he's now saying is that the police showed me the photograph before I identified the one out of six. And that he was told that he could potentially be prosecuted for being under the influence of illegal drugs if he didn't testify to his identification in court. There are coercive tactics. It was brought out that he was a user of cocaine. It was brought out that he was a user of meth. It was brought out that he was a user of multiple drugs and drink. Yes, Your Honor. That inference was available for the jury.  Yes.   I think it's a good point. You have a trial. You have a trial. So what we want to do is to redo the trial at a time when all the evidence is lost to the government and you have only the recantation of Moran. And you have another affidavit about the nature of the truck, which also was the subject of exploration of the trial. I have great trouble with reopening this case on a claim of actual innocence when the actual innocence is just a rehash of the evidence of the trial. Well, I would, again, Your Honor, just dispute that it's a rehash of the evidence at trial. There's multiple things about this declaration that did not come out earlier in this at the trial. What are you relying on primarily among the multiple things? The coercive tactics used by the prosecution. For instance, the fact that Moran claims he was threatened with jail time if he didn't testify the way that the prosecutor wanted him to do. He says in the declaration that he was coached to testify about certain things, about this exchange of gang slurs that he says now never happened, which the prosecutor used to prove motive in this case. The idea here was that the shooting happened because of a rivalry between these two gangs. The Townsmen and the Puente gang. The only evidence supporting that really was this testimony from Moran that these, you know, the two sides shouted gang slurs at each other right before the shooting happened. He was the only person to testify about that. Now in this declaration he's saying that never happened. The prosecutor coached me to say that. And he says the prosecutor coached him to say that because if that had been stated, that would eliminate Charlie Brown as a suspect. Exactly. Because he did not qualify under those gang membership alignments. Exactly. Charlie Brown is in a third gang. And Charlie Brown. So if it's true that the prosecutor coerced or coached Moran into saying that this had been said by the shooter, that excluded the other possible suspect. Exactly. And the argument at trial had been Tiny Tim wasn't the shooter, but it was Charlie Brown who was the shooter. So we have a solicitation of false testimony by the prosecutor, which may or may not be true, but that's what Moran says is true. Exactly, Your Honor. And the only way to find out is to remand for hearing and test the credibility of this new declaration. But that was the very issue at the trial. It was the same issue. The jury heard that Walker had made a false identification first, that he confused Charlie Brown with Tiny Tim. But the jury didn't hear about that. Precisely the issue the jury heard. The jury didn't hear about the suggested technique that was used to make that identification. They didn't hear about this one photograph show up. What Moran said was that. There's not a prosecution that wouldn't be subject to that kind of recantation. Well, that's only one aspect of the declaration, as Judge Fletcher just pointed out. There is this whole other aspect of the declaration that goes to the motive here, which the Supreme Court said in House v. Bell. You have an identification of Charlie Brown. You have a changed identification of Tiny Tim. You have Walker and Moran running away from the shooter, never having seen the shooter really. And identifications that are suspect and weak. And all this was put before the jury. There's no claim that the evidence was insufficient. And now you want to, in effect, change the evidence by blaming the prosecutor for procuring false testimony. I suppose that is different. But it seems to me it's classic in all criminal prosecutions. You're going to have that issue on a recantation. Well, Your Honor, one thing that we haven't touched on is just the fact that Mr. Walker's testimony was so crucial to the prosecution. But now it appears that he may have been lying about many of the key things that go to his perception and his credibility. For instance, he testified that he wasn't under the influence of drugs and alcohol at the time of the shooting and that he had normal perception that day. Now we know from Mr. Moran's 2005 declaration that he may have actually been using drugs the night before and into the day of the shooting and that he may have been lying about his gang affiliation, all of which would go to his credibility. So this is also new impeachment evidence, which this Court has found is very relevant to the Schlipp analysis, if it can significantly undermine the prosecution's case, which it does here, because the main eyewitness, Robert Walker, who made an in-court identification, may have been lying. Did it come out at trial that Moran told Bobby Walker to say that it was Tiny Tim? Yes, it did. Yes. That did come out. So that isn't necessarily new evidence, but it does fit with the 2005 declaration in terms of Mr. Moran's manipulation of the facts at the behest of the prosecution. Counsel, do you want to get back to your alternative argument that statutory tolling still works here? The 2244 D1D standard requires that we show that he couldn't have found the factual predicate for this claim any earlier through the exercise of due diligence. Well, what do you do with the decision of the Supreme Court of California based on the petition not being properly filed? Don't we have to credit that determination as being untimely? Ordinarily, yes, Your Honor, but under these circumstances, it's clear that Mr. Perez was not on notice of the change in law and that he was likely relying on prior circuit precedent when he failed to file a case protective petition before pursuing exhaustion in State court. This Court's decision in Netsby Calderon says such reliance on prior circuit precedent can be presumed from the circumstances. Here we know that Perez made allegations that he didn't have the assistance of anybody trained in the law, didn't have sufficient access to the law library, and that the law library was deficient. We also can see from the timing of his filings that ---- So did Mr. Perez's case abrogate that earlier Ninth Circuit ruling? It did, Your Honor. Yes, that's right. So how can he rely on it? He relied on it because he didn't ---- he wasn't aware of the change in law, which this Court has found is a valid basis for equitable tolling. In this particular type of circumstance, the two cases are Harris v. Carter and Netsby Calderon that go to reliance on outdated circuit precedent, specifically when pro se incarcerated petitioners just aren't on notice in the change in law brought about by Pace. So, but that goes more to equitable tolling. Going back to the issue of the delayed triggering date under 2244 D1D, this is newly discovered Brady evidence, and through no exercise of ---- through no fault of Mr. Perez, he just wasn't aware of this earlier because it was suppressed. It's ---- this case is similar to Cassano v. Scribner in which this Court found that the petitioner was entitled to a delayed triggering date because the newly discovered evidence there was newly discovered Brady evidence. And I see that I'm down to about a minute. If I could reserve the ---- You may wish to reserve the remainder. Yes, please. You may do so, counsel. We'll hear from the State. Good morning, Deputy Attorney General Colleen Tiedemann for the Respondent. As a preliminary matter with regard to the McQuiggan v. Perkins case, I would submit that it would be prudent for this Court to hold off on ruling in this case until the Perkins case has been decided. The first issue in this case with regard to the actual innocence is exactly the issue that the Court has taken up in Perkins. The first question that has been certified in Perkins is whether there actually is an actual innocence exception to the statute of limitations, and if so, whether there is an additional requirement that the petitioner demonstrate he's been pursuing his rights diligently. The law as it stands now in Levy-Lambert recognizes an actual innocence exception. Levy-Lambert did not comment upon the requirements of due diligence. Even if the Supreme Court next month, and again, this argument is on calendar in the – the Perkins case is on calendar for argument for February 25th. Even if that Court does find an actual innocence exception, it will no doubt give the Court guidance on how to analyze these cases. And again, we also submit that the Court hopefully will find a diligence requirement which the petitioner in this case has not satisfied. In any event, even if the Court finds there to be actual innocence and a diligence – and the lack of a diligence requirement, I would submit that this petitioner has not established he's actually innocent in this case. Again, I noted the current standard of the law as it stands is Levy-Lambert. The Schlupf standard, as discussed in Levy-Lambert, requires the petitioner to demonstrate that it is more reasonably – it was more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. This Moran declaration that petitioner relies upon never contradicts his trial testimony. At trial, he disqualified the petitioner as the shooter. He said when he was asked in court, do you see the shooter here, he said, no, I don't. Now, he also said the same thing at the preliminary hearing. The statements that were made in this declaration are purely ancillary – regard to ancillary matters. There's the gang slurs that counsel discussed. Even if those statements in the declaration contradict the trial testimony, there are other witnesses who testified at trial, never commented upon the fact that they heard any gang slurs. There's no other evidence that gang slurs were made directly prior to the shooting. But isn't that important, that there's no evidence of any gang slurs except that which first came from Moran? I'm sorry? Isn't that important, that no one except Moran talks about the gang slurs because it's the gang slurs that if they were actually done, it's those that exclude Charlie Brown? Well, the jury heard all this information. The jury heard the testimony of Moran. But I don't think you want to – maybe you haven't understood, but you didn't answer my question. If Moran is the only person to testify that the gang slurs were made, that is to say, contrary to the Townsend and in favor of Puente, instead of, as Walker testifies, Puto. So the only person who says these gang slurs were uttered is Moran. Correct. The gang slurs, if uttered, exclude Charlie Brown. There's no other evidence in the case that excludes Charlie Brown. Is that right? I don't believe there's other evidence that excludes Charlie Brown. There's other evidence that, of course, tends to inculpate the defendant. I got that part. Correct. That would be my point, that, again, there is other evidence that inculpates him. Right. But, again, these go to ancillary matters. The key issue in this case is the fact that this declaration did not recant the most important part of Mr. Moran's testimony, the part where he disqualified this petitioner as the shooter. You know, I've read an awful lot of recantation affidavits over the years, and recantation, for good reason, is strongly disfavored. I've never read a recantation affidavit as strong as this one. Okay. What can you say about that? I'm not quite sure what to say. I don't believe – I would disagree. I don't believe that this declaration is a strong recantation of his testimony. I submit that it goes to the jury. Well, he says he lied. He says he lied about ancillary matters that are not related to what he saw, who the actual shooter was in this case. At the preliminary hearing and at the trial, he disqualified this petitioner as the shooter. And his declaration does not contradict that. As the magistrate judge noted in her report – Well, you know, in any gang case – in fact, we had one of these yesterday. In any gang case, it is extraordinarily common for statements to have been made to the police or at an earlier time. And then when trial comes and a gang member is a defendant and the witness is asked to say, is that the person, the intimidation in those cases is so strong that the answer often is, I don't remember, I don't recognize him. And then the prosecutors quite reasonably bring in the prior statement and say, well, of course, you're maybe afraid or imply or whatever it is. I mean, in that sense, this is a classic case of you should believe the prior statement rather than the fact that he now says, I don't recognize him because this is a gang case. Well, and I would respond that that's why we defer to the trial court in these type of cases and we don't reopen the case. The jury had the opportunity to see these witnesses, see their demeanor, see their expressions, hear the live testimony, and make a credibility determination regarding why they were testifying the way they were at the time of trial as opposed to what they may have said in a previous statement. I mean, I would submit that, again, that's the purview of the trial court and the purview of the jury to make those type of credibility determinations. And when we get to this situation, to this stage, we shouldn't be going back and looking at, you know, questioning what the jury may have seen, which we don't have the ability to see at this time. We can't judge what the witness looked like, whether we determined them to be credible, whether we thought they were intimidated. And, again, this is all testimony that can and was brought out by defense attorneys during cross-examination. The inconsistencies were discussed and presented to the jury, and the jury made a determination that the defendant was guilty in this case. Could we go over the Moran Declaration? Yes. If we can understand it better, at least I can. It's at page 212 of the record. So he starts by saying, I lied. Yes. I gave numerous false statements at the request of the prosecutor and detective to strengthen the case against Tiny Tim and to strengthen Bobby Walker's testimony. And then he goes into the issue of the truck, which is another aspect of the request to Grant Tabias. He never contests his own identification at the photo array. I guess that's the point that you're making. All he does is to say that Bobby Walker's testimony was changed by the detectives, but that's hearsay. Correct. And I guess that's why you say it's not a dependable declaration. Are there other aspects that you'd like to draw us to our attention in terms of the lack of reliability of this declaration in terms of an actual innocence charge? The reliability of this witness? Yes. Well, this witness, I think it was you noted that this was a witness who at trial and in this declaration admitted to being a drug addict. He admitted that he was using drugs. That was in the trial. In trial and in his declaration he also admits that. He was drinking alcohol that day. And, again, I would just go back to the fact that there's nothing in this declaration that contradicts, that amounts to a true recantation that we look for in an actual innocence case. He talks about Bobby Walker. He says, Bobby also told me that he was also shown a single picture and was told it was Tiny Tim. And then he was shown six photos, which contained a picture of Tiny Tim. Then he told me he had changed his original statements from saying it was Charlie Brown to Tiny Tim because I told him that in front of the yard where he was shot and the detective told him it was Tiny Tim. At trial, this confusion between Charlie Brown and Tiny Tim came out. It did. There's no affidavit by the defendant, by Walker here, is there? No, there's not. So the person that was shot, one of the persons that was shot, has not come out with a new declaration? No, there's not a declaration from Mr. Walker in this case. And just briefly, I'd like to touch on kind of the second prong that the Court in Perkins has taken up with regard to this due diligence requirement. I'm sorry to interrupt one more time. But under Ninth Circuit law, in order to show an actual innocence claim, it's not necessary to say I'm innocent. It's only necessary to show that the evidence is so weak that a jury could not reasonably have relied on it. That is correct. And this was not very strong evidence to begin with. And now if you take, if you credit the Moran Declaration, it becomes weaker. I would submit that's the case. And that's really the argument and would be the argument in any recantation. Yes. With regard to this due diligence requirement, and that kind of goes over into the I'm sorry, again, in New York there's a high degree of suspicion to a recantation, almost to the point of close to a presumption against it. Does that exist in California? Yes. The same type of skepticism about it? Skeptically, yes. That is true. And the rational policy is that if you believe in recantations and have an evidentiary hearing on that, at a time years after the trial itself, all the inculpatory evidence is gone and all you have is the recantated exculpatory evidence. Yes. Which creates unfairness. I would agree. Sorry to lead you so. Yes. Very briefly with regard to the due diligence. And, again, we would hope that the Supreme Court would find there to be a due diligence requirement if it determines an actual innocence exception does exist. This defendant acted with zero diligence in this case. As early as 1993, we have evidence that the recantation of Moran was discussed between Petitioner and his attorney. And that's in two letters that were attached to one of Petitioner's declarations. In 1993, the attorney commented upon conversations he had with the Petitioner, noting the importance of getting a declaration from Moran prior to filing a habeas petition. In a letter dated October 1st, I'm sorry, October 1st of 1993, and this is page 348 of our supplemental excerpts of Record, Volume 2. So it's not for another eight years that the letter comes out from Moran. Is either of the dates right? The letters are in 1993? 1993, and the declaration from Moran was 2005. So it was 12 years later. Twelve years. Twelve years. On October 1st, 1993, the attorney notes that, and I'm quoting this, this is a letter to Petitioner. You indicated that you did not want me to file the writ of habeas corpus until you could obtain more definitive information regarding the whereabouts of Javier Moran. The letter concluded, we are awaiting word from you. Before proceeding any further, please advise. There's absolutely no evidence that this Petitioner did anything between 1993 and this sort of fortuitous encounter between Moran and an associate, a friend, in 2005 to locate Moran and to try to get a declaration from him to recant this testimony. But it's hard to do that when you're in the shoe. Well, I think he said he was in the shoe in the later part of 2006, 2007. There was no indication he did anything for those 12 years to try to contact this person, to try to get a declaration, even though, as the magistrate judge noted in the report and recommendation, he was clearly aware that this witness was possibly going to recant his testimony. So I would submit that even if the Supreme Court determines that there isn't an actual innocence exception and that there is no due diligence requirement, that, again, this Petitioner has failed. Let me ask it this way. What are we supposed to do with the Moran Declaration in this sense? Are we to treat it as true for purposes of what we're dealing with? And then if we get down the road, assuming that due diligence is not required after the Supreme Court's got through with it, so the due diligence requirement's not imposed, and the only obstacle to reopening is really the question as to whether or not there's been a sufficient showing of a likely innocence conclusion by the jury. At this stage, are we supposed to take everything that Moran says is true and send it back to the district court so we can have a hearing as to whether or not it believes Moran? No. I would say the answer is yes. Are we supposed to decide on our own whether we believe Moran? Well, I think what the law requires is that once a Petitioner has submitted new, reliable evidence, then this Court can take into consideration all the evidence in the case. That begs the question. Yes. Who decides the reliability, I think is what Judge Fletcher is asking. Well, I think you decide whether it's reliable, and I would argue that it's reliable. And on what basis do I decide whether it's reliable? I mean, this is what he says. Well, it's what he says. I think you go back to the fact that this was a drug addict. He was someone who admitted to using alcohol. I mean, and I have to emphasize, I think more important is the issue of whether it's new credible evidence. This is not new evidence. No, no, I don't question. I mean, I'm not on the issue as to whether it's new. I'm on the issue as to do I believe what he says. And do I, or do I say that's up to the district judge to decide whether he's telling the truth in the recantation. Well, I think that this Court can determine, can make that determination. And that is on appeal. Boy, I'm very reluctant to engage in fact-finding based on a piece of paper. He may or may not be telling the truth. Well, I would submit he's not telling the truth in this. I think the Court has to look at what he testified to at trial. And his testimony at trial was that he disqualified this Petitioner as the shooter. So you think he was telling the truth at trial. You think he's not telling the truth now, and you base that on? I think he's not disputing his testimony at trial in this case. He's not disputing, he's not disputing his testimony as to who the shooter was at trial. He doesn't comment upon that in this declaration. Thank you, counsel. Your time has expired. Mr. Kushner, you have some reserved time. Not in the law. First of all, Your Honor, the Respondent has never made the argument that Mr. Perez failed to act with diligence upon receiving Mr. Moran's declaration. So this case is immediately distinguishable from Perkins, where the, you know, the last declaration was got in 2002. He waited over six years to file his Federal habeas petition. Perez acted with as much haste as possible under the circumstances, filed his first habeas petition within six months of receiving it. And then on top of that, as the Court has pointed out, he was in the shoe for several years after this correspondence with Mr. Loya, and his incarceration in the security housing unit was actually much earlier than 2006 in a declaration that he appended to his objections to the report and recommendation. So I'm not going to argue that Mr. Loya failed to act with diligence upon receiving Mr. Moran's declaration. He makes clear that that happened after, in the intervening years, between getting the declaration and when Mr. Loya got off the case. I see that I'm over my time. Thank you, counsel.
judges: Hellerstein, O'scannlain, Fletcher